IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CENTIMARK CORPORATION,

*Plaintiff,*

v.

BRYCEN RIBORDY *and* CHERRY
COATINGS MANAGEMENT, LLC,

*Defendants.*

Civil Action No. 2:25-cv-987

Hon. William S. Stickman IV

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

On July 15, 2025, Plaintiff Centimark Corporation ("Centimark") filed a complaint against defendants Robert Ribordy ("Ribordy") and Cherry Coatings Management, LLC ("Cherry Coatings") (collectively, "Defendants"). Centimark's complaint alleges the following: a breach of contract claim against Ribordy, individually, for an alleged breach of his Employment Agreement ("Agreement") with Centimark (Count I); a violation of the Defend Trade Secrets Act under 18 U.S.C. § 1836 against Defendants, collectively (Count II); tortious interference with a contract against Cherry Coatings, individually (Count III); and a violation of the Pennsylvania Uniform Trade Secrets Act under 12 Pa. C.S. § 5302 against Defendants, collectively (Count IV). (ECF No. 1). Cherry Coatings has filed a motion to dismiss all claims brought against it pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)(2)") for lack of personal jurisdiction. (ECF No. 35). For the reasons set forth below, the Court cannot exercise personal jurisdiction over Cherry Coatings because the minimum constitutional requirements for personal jurisdiction have not been met. Cherry Coatings' motion will be granted.

# I.    FACTUAL BACKGROUND

Centimark markets, sells, installs, and services roofing and flooring solutions to various commercial and industrial clients across the United States and Canada.  Its headquarters are in Canonsburg, Pennsylvania.  (ECF No. 1, ¶ 13).  Centimark hired Ribordy as a laborer on or about June 22, 2009.  (*Id.* at ¶ 15).  Ribordy is a resident of the state of Arizona.  Ribordy was promoted by Centimark to a project manager position ("Project Manager") on or about July 16, 2014, which provided him "with more responsibility, increased wages and benefits."  (*Id.*).  Centimark required Ribordy to enter into an agreement ("Agreement") as a condition of his promotion to Project Manager.  Ribordy signed the Agreement on July 10, 2014.  (*Id.* at ¶ 16).  The Agreement contained provisions prohibiting Ribordy from disclosing Centimark's confidential information and trade secrets.  (*Id.* at ¶ 27).  Additionally, it set forth Ribordy's obligation not to compete with Centimark for a two-year period following the termination of his employment.  (*Id.* at ¶ 29).

In his new position, Ribordy worked for Centimark's Questmark division—a commercial flooring division that "offers a wide variety of services to its clients nationwide, including the installation and service of polished concrete, urethanes, coatings, resurfacers, along with floor repairs and maintenance."  (*Id.* at ¶ 18).  As Project Manager, Ribordy "played a pivotal part in overseeing sales activities through generating new business, progressing prospects through the sales pipeline, and ensuring seamless transitions to the operations team for successful project installations."  (*Id.* at ¶ 19).  During his time as Project Manager, Ribordy "became intimately familiar with all aspects of Centimark's sales activities and its current and prospective customers" throughout the United States and Canada, and further created and maintained relationships with "crucial customers."  (*Id.* at ¶¶ 20-21).  Centimark entrusted Ribordy with confidential information, customers, and trade secrets to aid him in the performance of his Project Manager role.  (*Id.* ¶ 31).

Ribordy sent Centimark a resignation letter via email on April 10, 2025, stating that he would be resigning from his role with the company. (*Id.* at ¶ 34). "[I]mmediately after Ribordy's final day at Centimark, he began working as a Vice President at Cherry Coatings." Cherry Coatings is a Texas-based limited liability company operating under Texas law with its principal place of business in Framers Branch, Texas. (ECF No. 1, ¶ 7). Cherry Coatings offers commercial painting and flooring services to clients across the United States.

Centimark learned that Ribordy was working for Cherry Coatings shortly after he resigned. (*Id.* ¶ 44). Centimark asserts that "[i]n the days and weeks leading up to his resignation, Defendant Ribordy accessed and downloaded Centimark's confidential information and trade secrets, including price sheets, business strategy plans, and documents containing Centimark client information." (ECF No. 43, p. 2). Centimark states in its complaint that Cherry Coatings is a direct competitor and "[u]pon information and belief, Ribordy misappropriated Centimark's trade secrets so that he could use them for the benefit of himself and Cherry Coatings and to Centimark's detriment." (ECF No. 1, ¶ 58). Centimark specifically alleges in its brief opposing Cherry Coatings' motion to dismiss that "[d]uring the time when Ribordy was accessing and downloading such information, Cherry Coatings was recruiting Ribordy for a role within its company." (ECF No. 43, p. 2). Centimark asserts that Cherry Coatings hired Ribordy in a role like the Project Manager position he held while at Centimark, and that once he began working for Cherry Coatings, clients Ribordy originally solicited for Centimark began giving business to Cherry Coatings. (*Id.*).

Ribordy and Cherry Coatings' Regional Vice President for the Arizona and Utah Regions Clint Badger ("Badger") had been in communication with each other since early March when Ribordy first contacted him to discuss the possibility of his employment at Cherry Coatings. (ECF No. 56-2, p. 12). Ribordy admitted that he had two meetings with Cherry Coatings' employees

while he was still employed by Centimark. (*Id.*). The first meeting occurred on March 24, 2025, in Arizona with Badger while Ribordy was still employed by Centimark. (*Id.*). The second meeting was held in Dallas, Texas where Ribordy met with several other employees at Cherry Coatings. (*Id.* at 12–43); (ECF No. 73, pp. 2–3). Badger acknowledged that he was made aware of Ribordy's employment agreement with Centimark before Ribordy began working for Cherry Coatings. (ECF No. 70, p. 43). Ribordy similarly stated that he provided a copy of the Agreement to Cherry Coatings before he received an offer of employment from Cherry Coatings. (*Id.* at 187–88).

Centimark, after learning of Ribordy's alleged conduct, "sent cease and desist letters to both Ribordy and Cherry Coatings informing them of Ribordy's ongoing obligations pursuant to his [Agreement]." (*Id.* at 201); (ECF No. 43-3).

The Agreement between Ribordy and Centimark contains a forum selection clause providing that any legal action arising out of or related to the Agreement will be brought and filed in Pittsburgh, Pennsylvania, such that Pittsburgh will serve as the exclusive forum. (ECF No. 43-3, p. 10). Cherry Coatings is not a party or signatory to the Agreement. (ECF No. 36, p. 11). Cherry Coatings avers that Ribordy worked in a non-sales position in Arizona. Further, it states that after he was hired, Ribordy did not perform services on Cherry Coatings behalf in Pennsylvania, did not solicit sales in Pennsylvania, and has not worked on any projects in Pennsylvania. (*Id.* at 12); (ECF No. 73, p. 2).

## II.    STANDARD OF REVIEW

Rule 12(b)(2) requires a court to dismiss a case when a court lacks personal jurisdiction over a defendant. FED. R. CIV. P. 12(b)(2). A court must analyze jurisdictional contacts on a claim-by-claim basis. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 104 (3d Cir. 2004). Once a

defendant contests the sufficiency of personal jurisdiction, the burden shifts to a plaintiff to establish personal jurisdiction. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). If there is no evidentiary hearing, a plaintiff must make a prima facie case by furnishing facts that establish with reasonable particularity that personal jurisdiction exists. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (citation omitted). If a court holds an evidentiary hearing, the standard of proof elevates to a preponderance of the evidence standard. *LaRose v. Sponco Mfg., Inc.*, 712 F. Supp. 455, 458–59 (D.N.J. 1989) (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). *See also Hufnagel v. Ciamacco*, 281 F.R.D. 238, 244 (W.D. Pa. 2012) (citing cases). If a plaintiff meets his burden, the burden shifts back to the defendant to present a compelling case that personal jurisdiction is unreasonable. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

A plaintiff's case cannot merely rely on the pleadings but must be supported by sworn affidavits or other competent evidence. *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 & n.9 (3d Cir. 1984). All allegations made by a plaintiff are accepted as true and all disputed facts are construed in the plaintiff's favor. *Carteret*, 954 F.2d at 142 n.1. To that end, any conflicts between the evidence submitted by a plaintiff and a defendant are construed in a plaintiff's favor. *In re Enter. Rent-A-Car Wage & Hour Empl.'t Practices Litig.*, 735 F. Supp. 2d 277, 307 (W.D. Pa. 2010). If a plaintiff initially fails to meet his burden but makes factual allegations suggesting that the requisite contacts exist, a court can order jurisdictional discovery to ameliorate the jurisdictional inquiry. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003).

Centimark, in its motion for a temporary restraining order and a preliminary injunction, stated that the "temporary restraining order and/or preliminary injunction is necessary to

immediately stop the irreparable harm suffered by Centimark because of Defendants' conduct." (ECF No. 3 ¶ 11). It posited that a preliminary injunction hearing would help "to ascertain the full extent of Defendants' unlawful activities." (*Id.*). On October 30, 2025, the Court held a preliminary injunction hearing. (ECF Nos. 65 and 70). During the hearing, Ribordy confirmed that no communications or discussions with Cherry Coatings took place in the Commonwealth of Pennsylvania. (ECF No. 70, p. 67). There were no additional facts provided during the hearing that spoke to whether Cherry Coatings is subject to personal jurisdiction in this forum.

### III.  ANALYSIS

Cherry Coatings has moved to dismiss Centimark's claims against it pursuant to Rule 12(b)(2), asserting that this Court lacks personal jurisdiction over it. A federal district court, sitting in diversity, applies the law of the forum state in which it sits to determine whether jurisdiction is proper. FED. R. CIV. P. 4(e). The Court will apply Pennsylvania law as it is the forum state. Pennsylvania's long-arm statute governs the boundaries of a court's ability to exercise general and specific personal jurisdiction over parties to an action brought within the state. 42 Pa. C.S.A. § 5322; *Betrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996). The Court must look to federal jurisprudence to determine whether Cherry Coatings is subject to personal jurisdiction in Pennsylvania. *Id.* at 150.

The Due Process Clause of the Fourteenth Amendment of the United States Constitution grants courts the authority to properly exercise personal jurisdiction if the plaintiff establishes the existence of either general or specific personal jurisdiction over the defendant in the forum state. U.S. Const. amend XIV; *Burger King Corp. v. Rudzewicz*, 471 U.S. 310, 319 (1985); *Int'l Shoe Co. v. State of Wash., Off. Unemployment Comp. & Placement*, 326 U.S. 462, 475 (1945). There are, however, alternative methods to establish personal jurisdiction over a defendant: if a court

does not otherwise have personal jurisdiction over the defendant, parties can consent to jurisdiction, or the defendant may waive their right to object to the lack of personal jurisdiction by entering a general appearance with the court. *Nat'l Equip Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964); *Lee v. Chesapeake & O. Ry. Co.*, 260 U.S. 653, 655 (1923). Centimark asserts that, through its consent, Cherry Coatings subjected itself to personal jurisdiction in Pennsylvania. (ECF No. 43, p. 5). For the reasons set forth below, the Court disagrees.

**A.  The Court lacks general personal jurisdiction over Cherry Coatings.**

Defendants are subject to general jurisdiction by a court if the defendant corporation's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). For purposes of finding that a corporation is subject to general personal jurisdiction, the United States Supreme Court has held that it is where its "place of incorporation and principal place of business" are located. *Id.* at 137 (citing *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011)). If, however, the defendant is a foreign corporation—incorporated and holding its principal place of business outside of the forum state—"the plaintiff must show that the defendant carried on 'a continuous and systematic part of its general business within the Commonwealth.'" *Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting 42 Pa. C.S. § 5301(a)(2)(iii)). The United States Court of Appeals for the Third Circuit has stated that such a showing requires "significantly more than mere minimum contacts to establish general jurisdiction. The nonresident's contacts must be continuous and substantial." *Id.* (citing *Dollar Sav. Bank v. First Sec. Bank Utah*, F.2d 208, 212 (3d Cir. 1985); *Gehling v. St. George's School of Medicine, Ltd.*, 773 f.2d 539, 541 (3d Cir. 1985)).

Cherry Coatings is not subject to general jurisdiction in Pennsylvania. It is incorporated, with its principal place of business, in the state of Texas. (ECF No. 1, ¶ 7); (ECF No. 36, p. 5). Additionally, Centimark cannot establish that Cherry Coatings has established "continuous and substantial" contacts with Pennsylvania as required to otherwise establish general jurisdiction. Cherry Coatings "is not registered to transact business in Pennsylvania; maintains no offices in Pennsylvania; and owns no real property, personal property, or bank and investment accounts in Pennsylvania." *Provident Nat. Bank*, 819 F.2d at 437; (ECF No. 36, p. 5). Moreover, Cherry Coatings does not, and has never, transacted any business, solicited existing or potential customers, or worked on projects in Pennsylvania. (*Id*. at 5–6).

The Court finds that Centimark has failed to establish that Cherry Coatings is subject to general jurisdiction in Pennsylvania.

### B. The Court lacks specific personal jurisdiction over Cherry Coatings.

> *1. Centimark has not alleged that Cherry Coatings has sufficient minimum contacts in Pennsylvania for the Court to exercise specific jurisdiction.*

Specific personal jurisdiction stems from "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 564 U.S. 770, 775 (1984)). A court will generally apply a two-prong analysis to evaluate whether specific personal jurisdiction exists over a defendant. *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 201 (3d Cir. 1998). First, it is required to ensure the nonresident defendant had sufficient "minimum contacts with the forum necessary for the defendant to have 'reasonably anticipated being haled into court there." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Second, if minimum contacts are established, a court, in its discretion, "may inquire whether 'the assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Id.* The second prong allows a court to

ascertain whether the defendant's "suit-related conduct" creates "a substantial connection with the forum State," ensuring its exercise of jurisdiction is consistent with due process. *Walden*, 571 U.S. at 284.  In evaluating whether to exercise specific jurisdiction over the defendant, a court must determine whether the nature of the defendant's conduct in connection with the forum was such that "he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Notably, specific jurisdiction over a nonresident defendant is proper if the "alleged injury arises out of or relates to actions by the defendant *himself* that are purposefully directed toward forum residents, and where jurisdiction would not otherwise offend 'fair play and substantial justice.'" *Burger King Corp.*, 471 U.S. at 464 (quoting *Int'l Shoe, Co.*, 326 U.S. 320)).  Specific jurisdiction requires a showing that defendant purposefully availed itself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  Such a showing may be made through citing defendant's (1) deliberate actions directed at or within a state; (2) creation of a continuing obligation "between himself and residents of the forum;" or (3) unequivocal benefit from "the privilege of conducting business there." *Id.*; *see also Burger King Corp.*, 741 U.S. at 475–76.

If, however, defendant's contacts were merely "'random', 'fortuitous', or 'attenuated contacts,' or the result of 'unilateral activity of another party or a third person,'" defendant should not be haled into court in the forum state. *Id.* (quoting *Keeton*, 465 U.S. at 774; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

Centimark has failed to make the required showing that Cherry Coatings has availed itself of the privileges of conducting its business within Pennsylvania.  No action taken by Cherry

9

Coatings was directed at Pennsylvania, it has not created a continuing obligation with any residents of Pennsylvania, and it has never conducted business in Pennsylvania.

> 2. *Centimark has failed to satisfy the Calder test to assert personal jurisdiction over Cherry Coatings.*

Because Cherry Coatings did not have physical contacts with the forum, but Centimark alleges that Cherry Coatings tortiously interfered with the Agreement between Centimark and Ribordy, the Court may employ the *Calder* "effects test" adopted by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). "Generally speaking, under *Calder* an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 260, 263 (3d Cir. 1998) (finding that "the mere allegation that the plaintiff feels the effects of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy" the "expressly aimed" factor of the *Calder* test). The Third Circuit explained that a plaintiff will successfully satisfy the *Calder* "effects test" if it shows the following:

> (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Id.* at 265–66. The elements, taken together, must demonstrate that the defendant knew that the specific tortious activity it engaged in was "expressly aimed at the forum" and would cause "the brunt of the harm" in the forum. *Id.* at 266.

The United States District Court for the Eastern District of Pennsylvania applied the *Calder* test to facts like those present here. In *Radian Guar. Inc. v. Bolen*, 18 F. Supp. 3d 635, 644 (E.D. Pa. 2014), the court found that plaintiffs did not meet the burden of proof required by *Calder*. The

mere assertion that a former employee entered an employment relationship with an alleged competitor with knowledge of the non-competition agreement containing a forum selection clause was "insufficient to meet the 'expressly aimed' standard."[1]  *Id.*

Centimark has alleged the following pertinent to Cherry Coatings' contacts with this forum: Cherry Coatings intentionally acted in hiring Ribordy, knowing that Ribordy had entered into the Agreement with Centimark containing non-compete and non-solicitation provisions, as well as a forum selection clause, all of which put Cherry Coatings on notice that it may be sued in that forum.  (ECF No. 70, pp. 43, 187–88); (ECF No. 72, p. 4, n. 7) (citing ECF No. 35).  Although Centimark's allegations are sufficient to establish the first and third factors of the *Calder* test— that Cherry Coatings acted intentionally and knew of the forum selection clause naming Pennsylvania as the chosen location for dispute resolution—Centimark has not established that Cherry Coatings "expressly aimed" its tortious conduct at Pennsylvania.  (*Id.*).  Additionally, the Supreme Court's opinion in *Walden* narrowed the application of the *Calder* test, finding that, in the absence of defendant's conduct in the forum, if the plaintiff is the only link between the defendant and the forum, no basis for jurisdiction exists.  *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 918 (N.D. Ill. 2017); *Walden*, 571 U.S. at 289.  As Centimark is the only connection between Cherry Coatings and Pennsylvania, the *Calder* test cannot create a basis for exercising personal jurisdiction over Cherry Coatings.

    3.  *The closely related party doctrine does not apply to Cherry Coatings.*

---

[1] The facts in *Radian* are similar to the facts at issue in this case.  The plaintiff alleged that its former employee breached its non-competition agreement and misappropriated trade secrets and confidential information when it went to work for a competitor.  The new employer was named as a defendant because plaintiff alleged it "knowingly induced [former employee] to join them in violation of [the] non-competition agreement and with the express intent of benefiting from her knowledge of [plaintiff's] trade secrets and confidential information."  *Radian Guar. Inc.*, 18 F. Supp. 3d at 644.

In the absence of requisite contacts, consent is an alternative method for courts to exercise personal jurisdiction over a party. Centimark cites to *Matthews Int'l Corp.*, No. 2:20-cv-00089, 2020 WL 1275692, at *3 (W.D. Pa. March 17, 2020), which states, "consent may take the form of a contractual forum selection clause." (citing *Synthes, Inc. v. Emerge Medical, Inc.*, 887 F.Supp.2d 598, 606 (E.D. Pa. 2012)). "Under traditional principles of contract law, non-signatories may be bound by a forum selection clause if they are intended third-party beneficiaries of the contract, or if they are closely related." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 59 (3d Cir. 2018). Courts weigh several factors to determine whether a non-signatory is closely related to the contract signatories, such as "the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement." *Id.* at 63 (quoting *Carlyle Inv. Mgmt. LLC. v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015)).

The Agreement between Centimark and Ribordy contained a forum selection clause. Although Cherry Coatings was not a signatory to the Agreement, Centimark alleges that it can enforce the forum selection clause against Cherry Coatings because it is "closely related" to Ribordy. (ECF No. 43, p. 4). Centimark contends that the Court should exercise jurisdiction over Cherry Coatings as a closely related party based on Ribordy's consent to personal jurisdiction, rather than through a minimum contacts analysis as required by the due process clause. (*Id.* at 3).

In *Burger King Corp.*, the Supreme Court stated that consent to personal jurisdiction through a forum selection clause is appropriately enforced without offending due process if the clause has "been obtained through 'freely negotiated' agreements and [is] not 'unreasonable and unjust.'" 471 U.S. at 473 n. 14 (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). However, when parties to a contract freely negotiate forum selection clauses, those parties are

explicitly consenting to personal jurisdiction in an agreed upon forum. Conversely, in a case such as this, Centimark asks the Court to find that Cherry Coatings impliedly consented to personal jurisdiction—i.e., Cherry Coatings was not a party to the Agreement and did not play a part in negotiating the Agreement, thus it did not expressly consent. Courts are divided on the circumstances in which consent will be imputed through the closely related party doctrine.

The Eastern District of Pennsylvania found that a non-signatory defendant was "so closely related to the dispute between" the parties to the original contract "that he should have reasonably foreseen that he would be bound by the forum selection clause." *Synthes*, 887 F. Supp. 2d at 611. It hinged exercising specific jurisdiction on the foreseeability factor because—where the non-signatory defendant knew of the non-competition agreement between plaintiff and its former employees, knew that his employment of plaintiff's former employee could be in breach of that agreement, and was "well aware of this potential litigation," he should have "anticipated that the forum selection clause in [employees'] Non-Competition Agreements would be enforced against him in a suit claiming a violation of those agreements." *Id.* at 612. Further, it found that through the "closely related" standard, the signatory's consent to personal jurisdiction, via a forum selection clause, vacates the requirement to apply the minimum contacts analysis for the non-signatory defendant. *Id.* at 616, n. 4. However, the district court treated the non-signatory defendant as if, due to being closely related with a signatory to the contract, it explicitly consented to personal jurisdiction. *Id.* at 607.

Contrary to the holding in *Synthes*, several courts have found that "regardless of how foreseeable it may be that the defendant might be sued in a particular forum," it still holds true that "due process is not satisfied where the plaintiff is the only link between the defendant and that forum." *Guaranteed Rate, Inc*, 264 F. Supp. 3d at 918; (citing *Walden*, 571 U.S. at 286). The

Supreme Court has held that foreseeability is not enough to establish minimum contacts so "it should not be a sufficient basis for finding a wavier or implied consent either." *Guaranteed Rate*, 264 F. Supp. 3d at 926; *Walden*, 571 U.S. at 289.

Centimark cites to *Matthews Int'l Corp. v. Lombardi*, No. 2:20-cv-00089, 2020 WL 1309399 (W.D. Pa. March 19, 2020) to support its position that a non-signatory to an agreement containing a forum selection clause may be bound by that clause because it is closely related to the signatory of the agreement. The district court in *Matthews Int'l Corp.* found that it was appropriate to exercise specific jurisdiction over non-signatory defendants because the former employee was "bound by a restrictive covenant with a forum-selection clause" and that clause "may apply to non-parties who can foresee the forum-selection clause being an issue, but still move forward with hiring." *Id.* at *5 (non-signatory defendant hired former employees after receiving notice of agreements containing restrictive covenants as well as the forum-selection clauses between plaintiff and its former employees. The parties were closely related to each other, such that it was foreseeable that the non-signatory would be bound by the forum selection clause, too.). It relied on *In re McGraw-Hill*, a Third Circuit case which held that under "traditional principles of contract law," if a non-signatory is closely related to a party to the contract, it may be bound by the forum selection clause. *In re McGraw-Hill Glob. Educ.*, 909 F.3d at 59. But *In re McGraw-Hill* is a venue case, and as several district courts have found, it is unrelated to the issue of personal jurisdiction. *See Am. Neighborhood Mortg. Acceptance Co., LLC v. Lund*, No. 1:19-cv-03666, 2021 WL 1248522, at *5 (D.N.J. April 5, 2021); *Guaranteed Rate*, 264 F. Supp. 3d at 925.

The United States District Court for the Northern District of Illinois faced similar facts as those here when deciding whether it was appropriate to exercise personal jurisdiction. In

*Guaranteed Rate*, a former employer brought an action against its former employees and their new employer (a competitor), alleging that the former employees breached the employment agreement containing a non-solicitation clause. *Id.* The former employer claimed that the competitor was closely related to its former employees, who were signatories to the agreement, so the Court could exercise specific jurisdiction over it. *Id.* Plaintiffs in *Guaranteed Rate* cited a case similar to *In re McGraw* to support their claim that the non-signatory defendant is subject to personal jurisdiction. They argued that the Seventh Circuit, in *Adams v. Raintree Vacation Exchange, LLC*, 702 F.3d 436 (7th Cir. 2012) held that a nonparty is bound by a forum selection clause in an agreement if it is closely related to one of the signatories to the contract or to the lawsuit. *Id.* The district court however emphasized that *Adams* is a venue case, whereas "the issue here of whether a defendant may be found to have waived an objection to personal jurisdiction based on a forum selection clause in a contract to which it is not a party is beyond the scope of what was contemplated by the Seventh Circuit in that case." *Id.* at 924. "While objections to both personal jurisdiction and venue may be waived, venue is 'primarily a matter of choosing a convenient forum' and 'implicates no constitutional principle,' while 'due process considerations are present in all personal jurisdiction inquiries.'" *Id.* (quoting *Abelesz v. OTP Bank*, 692 F.3d 638, 660 (7th Cir. 2012)).

The district court in *Guaranteed Rate* further expressed that it had "serious concerns over whether it would be 'reasonable and just' to apply a 'close relationship' test that relies on 'foreseeability' to find implied consent to personal jurisdiction." *Id.* (citing *Burger King Corp.*, 471 U.S. at 473 n. 14). Further, it stated that "it does not make sense to tie the concept of implied consent to foreseeability" because consenting to personal jurisdiction acts as a waiver of "objections to a court's assertion of personal jurisdiction. And a waiver is defined as 'a conscious

relinquishment of a known right.'" *Id.* (citing *Anderson v. Catholic Bishop of Chi.*, 759 F.3d 645, 651 (7th Cir. 2014)).[2]  It went on to note:

> [w]hile it may be *foreseeable* to a nonsignatory who knowingly allows itself to become embroiled in a dispute related to a contract with a forum selection clause that it is at risk of being sued in the contractually selected forum, the foreseeability of that risk does not mean the nonsignatory *intended to relinquish* its constitutional right to be free from suit except in a forum with which it has minimum contacts. A court that holds that such a nonsignatory is bound by the forum selection clause is really applying a concept more akin to forfeiture or estoppel than waiver or implied consent.

*Id.*  Relying on the Supreme Court's opinion in *Walden*, the district court stressed that "regardless of how foreseeable it may be that the defendant might be sued in a particular forum, due process is not satisfied where the *plaintiff is the only link between the defendant and that forum*."  *Id.* at 918 (citing *Walden*, 134 U.S. 277).

The United States District Court for the District of New Jersey applied the analysis and rationale outlined in *Guaranteed Rate* as to whether exercising personal jurisdiction over a non-signatory defendant is constitutional.  *Am. Neighborhood Mortgage Acceptance Co., LLC*, 2021 WL 1248522, at *6.  Further, it rejected the *Matthews* decision which Centimark relies on here because it "fails to acknowledge, let alone discuss, the impact of *Walden* on the *Calder* test, fails to provide a detailed analysis of *IMO*, and fails to recognize the due process implications of it[s] decision to assert personal jurisdiction because the 'closely related' test was satisfied by relying on *In re McGraw-Hill*, a venue case."  *Id.* (citing *Guaranteed Rate*, 264 F. Supp. 3d at 917, 919, 925–26).  The Court agrees with the district court in *Am. Neighborhood Mortgage Acceptance Co.*,

---

[2] Whether it "be express or implied…the evidence must show a clear, unequivocal and decisive act of a party demonstrating *intent* to" effectively waive its known right.  *Guaranteed Rate, Inc.*, 264 F. Supp. 3d at 926 (quoting *Anderson*, 759 F.3d at 651).

which held that "the Third Circuit would adopt the reasoning in *Guaranteed Rate*" and further reject the reasoning in *Matthews*. *Id.*

Centimark's assertion that the Court can exercise personal jurisdiction over Cherry Coatings under the closely related party doctrine, based on Ribordy's consent to a forum selection clause, fails. As stated in *Truinject Corp. v. Nestle Skin Health S.A.*, No. 19-592, 2019 WL 6828984, at *11 (D. Del. Dec. 13, 2019), where a defendant is not a party to an agreement, "a court should not exercise jurisdiction unless the record otherwise demonstrates 'minimum contacts' between the defendant and the forum." Centimark has failed to established that Cherry Coatings engaged in constitutionally sufficient minimum contacts in Pennsylvania. It has not sufficiently alleged personal jurisdiction through the *Calder* test. The closely related party doctrine is inapplicable here as the relationship between Ribordy and Cherry Coatings is merely an employment relationship, and Cherry Coatings was not a party to Ribordy's employment agreement with Centimark. Centimark fails to establish the required relationship between Cherry Coatings, the forum, and the litigation; instead, Centimark remains the only link to Pennsylvania.

## IV.    CONCLUSION

For the foregoing reasons, Cherry Coatings' motion to dismiss for lack of personal jurisdiction will be granted by Order of Court to follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Dated ___12|4|2025___